IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-03117-PAB

JOHN RUSTAD,

       Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

       Defendant.

---

## ORDER

---

      This matter is before the Court on plaintiff John Rustad's complaint [Docket No. 1] filed on November 29, 2012.  Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner")[1] denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433.[2]

## I.  BACKGROUND

      On June 10, 2009, plaintiff applied for disability benefits under Title II of the Act. R. at 12.  Plaintiff alleged that he had been disabled since March 1, 2007.  *Id.*  After an initial administrative denial of his claim, plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") on April 28, 2011.  *Id.*  On July 14, 2011, the ALJ issued a decision denying plaintiff's claim.  *Id.* at 21.

---

      [1]Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin, who as of February 14, 2013 has been named as the Acting Commissioner, is automatically substituted for Michael J. Astrue as the defendant in this suit.

      [2]The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

The ALJ found that plaintiff had the following severe impairments: glomerulonephritis, hemochromatosis and membranous nephropathy.  R. at 14.  The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id.*, and ruled that plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 C.F.R. § 404.1567(b) except that he can lift and carry 20 pounds occasionally and 10 pounds frequently, sit for 2 hours at a time and 6 hours in an 8 hour work day, stand and walk each for 1 hour at a time, for a combined total of 6 hours in an 8 hour work day, operate foot controls occasionally bilaterally, requires regular breaks (at approximately every two hour point, thus with the opportunity to shift positions every 2 hours); does not require an assistive device, can occasionally climb ramps and stairs, never climb ladders or scaffolds, can frequently balance and kneel, occasionally stoop, crouch and crawl and must avoid concentrate [sic] exposure to extreme cold, extreme heat and to fumes and odors.

R. 16.  Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that, through the last date the plaintiff was insured, "there were jobs that existed in significant numbers in the national economy" that plaintiff could have performed.  R. at 20.

The Appeals Council denied plaintiff's request for review of this denial.  R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse

an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

3

exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of

those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## C.  The ALJ's Decision

Plaintiff argues that the ALJ erred in (1) evaluating plaintiff's treating physician's opinions of disability; (2) assessing plaintiff's RFC; and (3) determining that plaintiff was not credible.  Docket No. 12 at 5.  Plaintiff also argues that the Commissioner erred in failing to take into account supplemental materials from Dr. Block and another treating physician, Dr. Mooney, that were submitted to the appeals council.  *Id.* at 10. Defendant responds that the Court should defer to the ALJ's decision to give substantial weight to the testifying expert based on the expert's qualifications.  Docket No. 13 at 9.

The relevant evidence of record is as follows.  Plaintiff claimed that he became unable to work on March 1, 2007 due to glomerulonephritis,[3] hemochromatosis,[4] and high blood pressure.  R. at 154, 177.  Plaintiff was diagnosed with kidney disease in 1996, *id.* at 250, and was able to work through early 2007.  *Id.* at 159.  In December 2006, plaintiff saw Dr. Geoffrey Block, a kidney specialist, and reported that he had not been feeling well for the past three months.  *Id.* at 385.  Specifically, plaintiff complained of fatigue, occasional mild leg swelling, headaches, and feeling cold.  *Id.* During that time, plaintiff stopped working.  *Id.*  Dr. Block reported that plaintiff was not experiencing a flare of his kidney disease due to high albumin levels and had no leg

---

[3]Glomerulonephritis is "renal disease characterized by diffuse inflammatory changes in glomeruli that are not the acute response to infection of the kidneys." Stedman's Medical Dictionary glomerulonephritis (27th ed. 2000).

[4]Hemochromatosis is a "disorder of iron metabolism characterized by excessive absorption of ingested iron, saturation of iron-binding protein, and deposition of hemosiderin in tissue, particularly in the liver, pancreas, and skin."  Stedman's Medical Dictionary hemochromatosis (27th ed. 2000).

swelling.  *Id.*  Dr. Block recommended that plaintiff lose weight.  *Id.*  Dr. Block ordered
no change in plaintiff's medications.  *Id.*

In April 2007, plaintiff saw his primary care physician, Dr. Robert Carson.  R. at
250.  At that visit, plaintiff reported that he had been "doing well," but noted an episode
of fatigue the previous November.  *Id.*  As of the April 2007 visit, plaintiff was
experiencing no headaches, dizziness, or lightheadedness.  *Id.*  Plaintiff did report
occasional edema.[5]  Dr. Carson noted that plaintiff was on "appropriate medications" for
his kidney disease and that his hemochromatosis was stable and his hypertension was
"fairly well controlled."  *Id.* at 251.

In May 2007, plaintiff reported to Dr. Block that he felt "a lot better" than he did
during his December 2006 visit.  R. at 382.  Plaintiff still complained of fatigue, but
"denie[d] any other systemic symptoms" and had no leg swelling.  *Id.*  Dr. Block noted
"falling albumin" that he found concerning, but said that it was unclear if plaintiff was
experiencing a flare of his kidney disease or whether his lab results were "the long term
consequence of having glomerular injury."  *Id.* at 384.  Dr. Block placed plaintiff on a
new medication.  *Id.*

In September 2007, plaintiff told Dr. Block that he was doing "extremely well."  R.
at 379.  Plaintiff said that he did not tolerate the new medication and was not taking it.
*Id.*  Dr. Block noted that plaintiff had no urinary symptoms and no leg swelling, *id.*, and
that he believed that plaintiff was experiencing a "hyperfiltration/loss of renal mass

---

[5]Edema is "an accumulation of an excessive amount of watery fluid in cells or
intercellular tissues" or "swelling."  Stedman's Medical Dictionary edema (27th ed.
2000).

6

issue" rather than a flare of his kidney disease.  *Id.* at 381.

Plaintiff next saw Dr. Block in January 2009.  R. at 375.  At that visit, he reported "generally feeling well" except for a lack of energy.  *Id.*  Dr. Block noted that while plaintiff was experiencing "variability in his urine protein and a modest but stable decrease in his serum albumin," he had no other symptoms of severe kidney disease, and his condition was either "modestly active membranous nephropathy" or the "result of hyperfiltration injury" due to plaintiff's fourteen years of chronic kidney disease.  *Id.* at 377.  Dr. Block noted that plaintiff's condition was "very stable" and that he "lack[ed] [] symptoms."  *Id.*

In February 2009, plaintiff experienced a "relapse" in his kidney disease, and Dr. Block altered his medication.  R. at 373.  The following month, Dr. Block reported an "excellent decrease in [plaintiff's] urine protein" in response to the new medication.  *Id.* at 368.

In March 2010, Dr. Block wrote a letter in which he discussed plaintiff's ability to work.  R. at 422.  Dr. Block stated that plaintiff's disease is "characterized by often severe leg swelling and fatigue," and that plaintiff is "at risk for development of a blood clot related to the heavy loss of protein in his urine."  *Id.*  Dr. Block further wrote that plaintiff would need "frequent unscheduled breaks during the day" to minimize the risk of leg swelling, and that he "should not perform activities which would require prolonged periods of immobilization (at a desk or in a chair) as this can be a predisposing risk for blood clots."  *Id.*  The next month, Dr. Block wrote a second letter that specified that plaintiff "should not be on his feet in an eight hour work situation for more than two

hours out of the eight, and should not be on his feet for more than thirty minutes at any one time" due to "fatigue and the increased risk of swelling." *Id.* at 434.

On April 20, 2011, state agency reviewing physician Karl Chambers completed a Physical Residual Functional Capacity Assessment. R. at 464-471. Dr. Chambers opined that "[t]jhe degree of limitation of ambulation by [Dr. Block] is not supported by the overall clinical findings" and that Dr. Block's opinion was therefore not entitled to full weight. *Id.* at 471. Dr. Chambers further opined that plaintiff was able to stand and walk for a total of four hours per day. *Id.* at 466.

At the hearing on plaintiff's disability application, state medical expert Alan Coleman testified at length about plaintiff's condition. *See* R. at 35-37, 39-54. Dr. Coleman specializes in internal medicine with a sub-specialty in nephrology. *Id.* at 45. Dr. Coleman never treated plaintiff, *id.* at 36, and based his opinion on a review of plaintiff's medical records. *See generally id.* at 39-43. Dr. Coleman testified that while plaintiff had "lost some kidney function," he "hasn't lost enough kidney function for it to affect his health or to threaten him with a need for dialysis or transplantation." *Id.* at 40. Dr. Coleman testified that patients with membranous nephropathy generally fall into three categories: about a third of patients get over the condition spontaneously within a few years, about a third develop progressive kidney failure, and the final third "seem[] to be fairly stable. They don't get better and they don't get worse[.]" *Id.* Dr. Coleman opined that plaintiff was in the third, stable group. Dr. Coleman further explained that when plaintiff's condition is serious, patients "have enormous edema" whereas plaintiff's record indicated that he had only mild to moderate edema. *Id.* at 41. With respect to

plaintiff's ability to work, Dr. Coleman opined that plaintiff is "functioning at a level of light activity" and could operate with "no limitations on standing and walking or sitting" and that any limitations were "self-imposed because of [plaintiff's] concern that his legs are going to swell." *Id.* at 48.  With respect to fatigue, Dr. Coleman stated that plaintiff's disease "at this level doesn't cause fatigue as far as we understand it." *Id.* at 50.

The ALJ gave Dr. Block's opinions "little weight" at step three, finding that the opinions spoke generally about the symptoms associated with plaintiff's disease, but "did not say that [plaintiff] actually had these symptoms." R. at 16.  The ALJ further noted an "absence of objective medical signs and findings" that plaintiff is "actually manifesting severe leg swelling or fatigue." *Id.*  Conversely, the ALJ found that Dr. Coleman's assessment was "amply supported by the objective medical evidence" and therefore gave it "great weight." *Id.* at 15.  The ALJ further found that plaintiff was not credible as to the "intensity, persistence and limiting effects" of the symptoms of his disease. *Id.* at 17.

### 1. Weighing Dr. Block's Opinion

Plaintiff first argues that the ALJ erred by making a determination as to the respective weight given to Dr. Block's and Dr. Chambers' opinions at the third step in his evaluation rather than at the RFC stage.  Docket No. 12 at 10-11.

The opinion of a treating physician is generally entitled to greater weight than that of a non-treating physician because of the unique perspective derived from a treating relationship.  20 C.F.R. § 404.1527(c)(2).  Thus, an ALJ must accord controlling weight to the opinion of a treating physician where that opinion is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  *Id.*  Moreover, the opinion of a treating physician merits some measure of deference to be determined based on an application of the factors listed in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii).  "The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled."  *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

As "findings of a nontreating physician based upon limited contact and examination are of suspect reliability," *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987), when such findings conflict with the opinions of a treating physician, the ALJ must examine the nontreating physician's report "to see if it outweighs the treating physician's report, not the other way around."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 n.13 (10th Cir. 2004) (citations omitted).  "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant."  20 C.F.R. § 404.1527(e)(2)(ii).

The ALJ declined to give Dr. Block's opinion controlling weight and gave specific reasons for disregarding Dr. Block's opinions concerning plaintiff's risk of leg swelling. R. at 16.  The ALJ concluded that Dr. Block's opinions constituted "literary obfuscation" because his letters focused on symptoms *associated* with plaintiff's condition rather than the symptoms that plaintiff himself exhibited.  *See id.*  The ALJ further specified that he gave Dr. Coleman's opinion "great weight" because it was "amply supported by

the objective medical evidence of record." R. 15. While the ALJ performed this analysis at step three of the five-step process and not at the RFC stage, the ALJ's decision was "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Plaintiff also argues that the ALJ ignored Dr. Block's opinion about plaintiff's inability to perform work that required long periods of immobilization due to the risk of blood clots. Docket No. 12 at 30; R. at 422. Defendant argues that the ALJ, in formulating his RFC determination, "acknowledged certain limitations suggested by Dr. Block, such as the requirement that Plaintiff avoid 'prolonged periods of immobilization (at a desk or in a chair)' that might increase his risk for blood clots." Docket No. 13 at 14. Plaintiff, however, correctly points out that "the ALJ never addressed the issue of blood clots." Docket No. 14 at 9 n.1; *see* R. at 14-21. Moreover, Dr. Coleman's testimony was silent as to plaintiff's risk of blood clots and any limitations it might place on his ability to perform work. *See* R. at 35-37, 39-54.

The Court finds that the failure to consider Dr. Block's opinion as to plaintiff's risk for blood clots is grounds for remand. Although the ALJ is "not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). Dr. Block's opinion that plaintiff's condition required him to avoid prolonged periods of immobilization is uncontroverted and at odds with the ALJ's RFC determination. Whereas Dr. Block opined that plaintiff must avoid prolonged

periods of immobilization, the ALJ found that plaintiff was able to sit for six hours in an

eight hour day.  R. at 16.  The Court cannot determine that the ALJ's failure to discuss

uncontroverted evidence relevant to this determination was harmless error.

### 2.  RFC Determination

Plaintiff argues that the ALJ erred by failing to address Dr. Chambers' opinion

that plaintiff was limited to four hours standing and walking in a day.  Docket No. 12 at

23.[6]  Notwithstanding defendant's assertion that plaintiff's argument is "not fully

developed," Docket No. 13 at 16, plaintiff is correct that the ALJ erred in failing to

discuss Dr. Chambers' opinion.  Dr. Chambers' opinion differs materially from the ALJ's

RFC finding.  *Compare* R. at 466 (finding that plaintiff could stand and walk for four

hours) *with id.* at 16 (finding plaintiff can "stand and walk . . . for a combined total of 6

hours in an 8 hour work day").  The ALJ's RFC determination is silent as to the weight it

put on Dr. Chambers' opinion, and the ALJ's findings instead appear to be based on his

assessment of plaintiff's credibility as well as his review of Dr. Block's opinion, which

stated that plaintiff could not be on his feet more than two hours in an eight hour day.

*See generally id.* at 17-19.  This falls short of the requirement that the ALJ "explain

how any material inconsistencies or ambiguities in the evidence in the case record were

_____

[6]Plaintiff also argues that the ALJ erred in failing to take into account any of the
records of his primary care physician, Dr. Carson.  Docket No. 14 at 3.  Plaintiff has not
demonstrated that this is harmful error.  Plaintiff says only that "Dr. Carson's records
contain evidence consistent with and supporting Dr. Block's opinions."  *Id.*  Plaintiff
points to no evidence in Dr. Carson's records, and the Court sees none, that would tend
to disprove the ALJ's determination that plaintiff's symptoms of leg swelling and fatigue
associated with his condition were mild and would not interfere with his ability to work.
*Clifton v. Chater*, 79 F.3d at 1009-10 ("an ALJ is not required to discuss every piece of
evidence").

considered and resolved."  SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996).

Plaintiff also argues that the ALJ's determination regarding plaintiff's ability to perform a wide range of light occupations was not supported by the testimony of the VE at the hearing.  Docket No. 12 at 30.  Indeed, the Court finds substantial differences between the ALJ's RFC determination and the hypothetical posed to the VE, the answer to which provided the basis for the ALJ's determination that a significant number of jobs existed in the national economy that plaintiff could have performed. Specifically, the ALJ found that plaintiff would require "regular breaks (at approximately every two hour point)" and "the opportunity to shift positions every 2 hours."  R. at 16. However, the hypothetical posed to the VE made no mention of regular breaks or the opportunity to shift positions at will.  *See generally id.* at 73-75.[7]  Based on this hypothetical, the VE found that plaintiff could perform the duties of a cashier.  *Id.* at 75.

The failure to mention plaintiff's need for breaks supports the need for remand. *Blevins v. Astrue*, 2011 WL 843961 at *9 (D. Kan. Mar. 8, 2011) (remanding where "the RFC . . . required that [p]laintiff should be able to shift positions at will, but that requirement was not even suggested to the VE") (internal citations and quotation omitted); *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993) ("testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision") (citations

---

[7]Although the ALJ did not ask the VE whether the ability to shift positions at will precluded employment, he did ask whether plaintiff could perform the job of cashier if he had to elevate his legs fifteen minutes per hour.  *Id.* at 75.  The VE responded that this limitation would eliminate not only the job of cashier, but any other employment possibility as well.  *Id.*  The ALJ did not include the requirement that plaintiff elevate his legs in his RFC determination.

and quotations omitted).  This is particularly true here, since the testimony that the VE did provide on the issue of breaks suggests that plaintiff's need for frequent unscheduled breaks may preclude him from obtaining employment.  When asked whether a need for "four or five unscheduled breaks a day" would preclude plaintiff from performing light work, the VE responded that he "[does not] know of any employer who's going to put up with that").  R. at 79.

In light of the aforementioned errors, the ALJ's decision will be reversed and remanded.  The ALJ's consideration of Dr. Block's opinion with respect to plaintiff's risk of blood clots, Dr. Chambers' opinion on the limitations on plaintiff's ability to stand and walk, and the VE's answer to a hypothetical consistent with plaintiff's RFC will provide the ALJ with the opportunity to reassess the totality of evidence supporting plaintiff's RFC.  Therefore, the Court will not address plaintiff's arguments that the ALJ erred in determining that plaintiff was not credible as to the severity of his symptoms and that the opinion of Dr. Mooney was ignored by the appeals council.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand").

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

DATED November 4, 2014.

BY THE COURT:


  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge